The case on the calendar is Dennis v. County of Tompkins. Good morning, Your Honors. Good morning. May it please the Court, I'm Ed Kopko, representing Joanne Cipolla-Dennis. First, I want to express my appreciation to the Court for indulging my request to have my family in the outer room. They're all vaccinated. That's so very kind of you. It's actually just as well because if they had been in the courtroom, they would be prone to let out a cheer for every point that I made. So thank you so much for that. In this First Amendment free speech limited public forum case, the restrictions adopted by Tompkins County can only be enforced under the jurisprudence of this Court and the Supreme Court if those restrictions are content neutral and reasonable. In this case, they are neither. They are not content neutral because under Turner Broadcasting, even if they were content neutral, if the real purpose of it was to restrict speech, then that is a prohibition that Tompkins County could not engage in. This case started out as a 12B6 motion. In our complaint, there are many reasons why the USDC should not have granted the 12B6. We allege in the complaint that there was selective use of this, that in fact they would allow some people to criticize employee, and I provide several examples of that. There are also other examples where Tompkins County ignored its own rule about speaking about employees and lauded and recognized some of their own employees. So I contend that under Turner Broadcasting, that there is nothing to support the neutral content of this regulation. Excuse me, Mr. Kupko, I thought that the issues that are before us were decided on summary judgment, not on the motion to dismiss. Your Honor, the county had filed the 12B6 and I filed a motion for summary judgment. Wait, that was before Judge McAvoy, right? Yes, Your Honor. But that, I thought that the thing we were reviewing here was Judge Mordew's later decision granting summary judgment for the defendants. Am I mistaken? No, Your Honor, I'm getting to that point. Here I do. But is there, you know, I just need to know what we are reviewing. Are you raising some issue about Judge McAvoy's decision on the motion to dismiss? No, Your Honor, I'm addressing Judge Mordew's decision, but I wanted to present that to you as what I consider to be the relevant background of this. Oh, so you're giving us some history. Yes, Your Honor. And the major point that I want to address the court about is what I believe to be the lack of standing. In the papers, Tompkins County itself explains that it has almost nothing to do with the employees. Well, that's the point, isn't it? I mean, that's their argument is that this, at least the personnel, no discussion of personnel rule is an appropriate rule because that's not the business of the legislature and so it would waste their time to talk about personnel. Now, that could be right or that could be wrong. But the question I want to ask is standing is a concept about who is allowed to bring a lawsuit in federal court. And so the question is, do you have standing to bring this suit? And the answer is yes, meaning your client, because your client was harmed by the rules that she is challenging. But I don't see how standing, unless you're using it in a different sense, is an issue with respect to that. They didn't bring a suit in federal court. They closed down your client when she was speaking at a meeting. And the question is, does the First Amendment permit that? So I'm not sure where standing comes in. Help me out. Yeah, in a tangential way, Your Honor. Here's my point about that. And I've looked through this court's jurisprudence. When you say tangential, what does that mean? You mean in a non-legal way? No, I think in very much a legal way. If I can address that point, Your Honor. I have looked through this court's jurisprudence about who has the burden of establishing the validity of these regulations that they have adopted. And frankly, I couldn't find anything. I think that the position should be that if Tompkins County is going to be advancing this and advancing the legitimacy of it and the constitutionality of it, there should be something like a burden of proof on the county to demonstrate that it is content neutral and that it is reasonable. I think if that rule of law was adopted, if the burden was on the county to do this, then I think it also follows that the county would have to establish that it has standing to do that. I understand what Your Honor was saying. I still don't understand that. The question really that you're presenting, it's a perfectly legitimate question, is do they have the burden to establish that these regulations were content neutral and reasonable? And let's assume that they do. The real issue that's before us is the legitimacy of the regulations. And so we can get to that, but what I want to ask is to be, I want to be clear what regulations you are challenging. I take it you are not challenging the legitimacy of a rule that says people have to sign in. Oh, no sir, not at all. That's the first, that's, okay, that's the answer to my question. The second question is you are challenging, are you challenging the facial validity of a rule that says we're not here to discuss personnel issues? Or are you only challenging the application of that rule and saying that may be a fine rule, but they're applying it in a viewpoint discriminatory way because they allow praise of county officials, but they don't allow criticism of people who work for the county? The, first of all, let me answer Your Honor's question. The first question is what am I challenging? It is paragraph four of the blue card that says something like, you know, I agree that I will not criticize any of the county. Well, it doesn't say that. It says I agree not to speak about county personnel matters. Yes, there you go. Thank you for correcting me, Your Honor. That's an important distinction. Yes, yeah, it is an important distinction. But that's a good segue into what Your Honor asked about the second part of the question. And the second part of the question is that I think in this particular instance for my client that that was selectively enforced because we know that Tompkins County allows in other instances criticism of employees. And we know in other instances that Tompkins County applauds and recognizes its employees. But when she was up there, she could not do that. And so the first question, the next question is in terms of the evidence that she was not allowed to speak because she criticized an employee. What is the evidence of that? As I understand it, the county says that this was all about she wouldn't sign in. And they hadn't even heard what she said. She didn't get to say what she wanted to say. So what is the evidence that they, the real reason was that she was going to criticize Deputy Morocco? Well, first of all, she had a very proud history of being an activist. She's a lesbian. She had done that in the past. She had appeared before the Tompkins County Legislature on other instances. It was her position that Deputy Morocco was biased towards lesbians. And she wanted to present her view. But that was something that happened a few years before. And she had spoken on many different issues apparently in the past. So are you relying on, the chair at one point refers to one of her prior statements, right? And talks about the last time you were here, you went overtime and you violated the personnel rule. So that, is that the key evidence here? That's part of the key evidence. There's also her affidavit that says that when she walked into the room, she overheard one of the members of the committee saying something like we're not going to let her talk, right? And that was in the record of the case. I think just. What was the stated reason for not permitting her to talk on the record? What is the evidence? The stated reason on the record is that she would not sign this card, right? And I think, Your Honor, that that was actually an aspect of free speech in and of itself. I think that she had the right. So you just, in answer to Judge Litch's question, said you were not challenging the requirement that people sign. Your Honor, you asked me specifically about her. I'm. We're not challenging that aspect of the card in general. We're talking about the application of this on May 17th with her. I think she did not sign this because, and I'm trying to explain that I think that in and of itself was an expression of free speech, that she had a right not to do that. Because she wanted to present this information. Well, but you see, she never said that. She never said, I refused to sign this card because it requires me to commit not to speak about personnel matters. She said, you have no right to make me sign anything. You have no right to get to make speakers identify themselves. And that has something to do with the state open meetings rule. And none of those are arguments that you've made. No, none of those are, but the first thing that she says is, you have no right to make me sign this. And that may be the essence of what we're talking about here. I don't think that they had a right to ask her to sign that. Because it has paragraph four on it. Yes, yes, your honor, because of that paragraph four and because of the other instances where we know that Tompkins County did not recognize and apply that evenly. She was the subject of a selective enforcement of that. Could you marshal the evidence that it was being applied selectively for us? Yes, your honor, I cite in the papers that there were a number of people. I mentioned an attorney slaughter who was representing an individual who had been fired. He had a very lively criticism of the county for firing her. There was another instance where a gentleman by the name of Polinka Collier was making a criticism about that. These are all in the records. And then there are- This is about Karen Bair? Yes, yes. Both of those people were speaking in defense of Ms. Bair, who was being fired by the county. Yes, yeah, but the point of it is- It's a kind of funny, it may be right. I mean, I think it's interesting to try and pose this in terms of criticism versus defense of county employees. But in a sort of realistic way, those people, like your client, were being critical of the county because they were saying, you guys are wrong to have fired Ms. Bair. And your client is saying they were wrong not to fire Morocco. But both speakers were being critical. At the same time, I think you are right that there is some difference there in terms of, is this positive or negative vis-a-vis the employee in question? That's your point. Yes, but if I may extend that argument, Judge. The blue card says that you're not going to talk about it, right? And your honor, accurately pointed out that it wasn't just criticism, it was talking about this. But what they do is, in fact, they allow the talking about it. Yes, so isn't that your strongest argument? It's not about signing in, and it's not about a rule, if there was an even-handed rule against talking about personnel matters, and that were really rigidly enforced. Yes. Wouldn't that be legitimate if the legislature says, look, we are talking about policy. We're a legislative policy-making body. We're not interested in whether the clerk at the thus and such office is rude. Take that up with the person who's in charge of that office. Wouldn't that be a perfectly legitimate rule if it were enforced even-handedly? Your honor, that would be so legitimate that I wouldn't even be standing here. Of course. So the real issue here is what you're arguing is the discriminatory enforcement of the rule, that the de facto rule is not viewpoint neutral. That's your point. That's it exactly, your honor. Okay. That's it exactly. And I still don't want to let go of this idea about the standing. I know that your honor has it, but if you would indulge me a little bit more about this. The standing idea, and I totally get what your honor is saying, that this is usually something that is analyzed with regard to the plaintiff, right? But when you are looking at, as I cite the Boca case in my brief, where the USDC said, when we're looking at the interest of a private person speaking in a limited public forum, and we're balancing the interest of the governmental body in trying to restrict that, that court said, we are going to lean in favor of the constitutional right to do that. My respectful suggestion to the court is that when you do that same analysis, that part of what you have to do to try to justify what Tompkins County did, and I say the burden, this may be a good opportunity for you guys to put that burden on a municipality. What I say is that part of the burden of justifying this, part of restricting a citizen's speech should be on the county, and with every aspect of it. They should be able and be required to come forward and say, we have a dog in this fight. Yes, but they do, you see, exactly because of the reason that you said, you wouldn't be here if this was evenhandedly enforced. And the reason is, they have an interest, it seems to me, in having an appropriate agenda. That if, this is a limited public forum, we're not saying, talking about what somebody can say in the public square. We're saying, at a meeting of the county legislature, the county legislature says, look, we don't want to hear about personnel gripes, because that's not what we do. Don't they have a legitimate interest, that I think you've sort of acknowledged, in having a rule like that. The problem is, whether they're enforcing it in a fair way, whether it's they're not allowing certain kinds of personnel speech, and they are allowing other kinds. Now, your honor, specifically to answer your question, no, they don't have that right, and I'll tell you why. So they could not have a rule that says, you can't come in here and just talk about the President of the United States. You can't come in here at a legislature meeting that's there to do public business, and we want to hear from the people of the county about what they think we should do. You can't come in and give a diatribe against Donald Trump or Joe Biden. We're not here for that. Why couldn't they have a rule like that? Yeah, well, first of all, my personal view is that the antidote to offensive speech is simply more speech. More speech. It's just about, like, here we have litigants come in, and they talk about the cases. You couldn't get up here and talk about your views about world affairs. Well, because we have a rule that says oral argument is for talking about the cases, a pretty sensible rule, and I've never seen anybody violate it. But why can't the county legislature have the same thing? They could just not invite the public in at all, right? Yeah, they can't do that because of the exact language of the First Amendment. She has to have an appropriate venue to present grievances to her government. Her government, in this instance, is the employer of a deputy that she thinks violates the rights of lesbians. She had, I believe, a right to present this specific argument, and- Okay, so you- But at any rate, what they surely cannot do, and this was the argument that you were articulating a few moments ago, is they can't selectively open the forum and allow some people to speak about personnel matters and forbid others based on the content of that speech. That's also your argument, right? Wait, you said that is also an argument you're presenting. Yes, Your Honor, because Turner Broadcasting says that you can convert the content neutral protection of this when you make it specifically against the speech. And that's my point about all of this stuff. And you've reserved two minutes of rebuttal time. Yeah, thank you so much, Your Honor. We will hear from Mr. Wood. Thank you, Your Honors. If it pleases the court, I'm Jonathan Wood. I'm the attorney for the appellees. This is a motion for summary judgment, and there really is no issue of fact. The fact is clear. The appellant came to a meeting. She started talking without signing in. The chair twice told her that she would be permitted to speak if she signed in. She explained that she wasn't signing in because she believed that the open meetings law, as interpreted by Robert Freeman, who was a former state employee, forbids sign-in requirements. And of course, open meeting law says nothing at all about public speaking. And that's also what she said in her deposition. That's why she didn't want to sign in. That's what she said. That's what the record said. And the record shows that the chair told her two times that he would allow her to speak if she signed in. The record is clear they did not know what she was going to speak about. Well, but what do you do with the fact that the chair says during that meeting, the meeting has rules and we're going to follow the rules. And I know at the last meeting, you went over your time and you spoke about personnel issues. I talked to you about that, can't have it. We're going to follow the rules. Doesn't that indicate that at least something that the chair is thinking about is that you're going to violate, I think you're going to violate the personnel rules and we need you to promise that you won't? Well, at the same time, he tells her she'll be permitted to speak if she signs in twice. I will point out, and this is important, she submitted what she was going to speak about later, right? She submitted it as part of the complaint and she testified. At no point does she criticize the job performance of a named county employee. She only discusses the sheriff, who is of course an elected official. So the argument essentially has nothing to do with the facts of the case. The facts of the case is she came with no intention of speaking about such a thing, and she wasn't permitted to speak solely because she wouldn't sign it, okay? So getting to the requirement, I already have discussed the fact that, I mean, I can tell you, in addition to the fact that the legislature doesn't supervise employees and doesn't, apart from the legislative function, I was a county attorney for 29 years. I can tell you, the last thing in the world you want is for a county legislature, an elected body, to become involved in personnel matters. It's pretty compelling that they stay out of it. Now, let's talk about the selective enforcement. It says, here's another forum if you want to complain. Yes, it does. It tells people because so people will know who to bring a complaint to. For example, if you have a complaint about a deputy sheriff, under law, the sheriff is the only person that can hire or fire that person. And the last thing you want is for a county legislature to be involved in that. One, they have no authority by law, but also, you don't want a bunch of politicians, frankly, involved in a personnel matter in which they have no power or control anyway. So, I mean, not only is it a sensible rule, it's a pretty compelling rule. In terms of the selective enforcement, so Mr. Capco mentioned a couple instances in which he mentioned Ray Slaughter, and the proper pronunciation is Michael Caplinka-Lair of the other person. On page 135 of the record, the clerk went through those things and thought that that never occurred. Those things which he ledged never occurred. And then later, when she's deposed in response, and I believe it's on page 330 of the record, it's between 330 and 332. She acknowledges that she may not have remembered those correctly. But you can go online today and watch those things, and they did not occur. They did not occur. So there's an argument that they make that it's selectively enforced, but the record is to the contrary. It's not selectively enforced. And of course, people get up, and what they're really talking about- What's online is not part of the record. What is the record exactly? Help me understand the record with regard to the Karen Baer incident. Sure. So there are two different things. On the Karen Baer incident, there is an allegation that it says Ken Slaughter spoke, but Ken Slaughter is not an attorney. His brother, Ray Slaughter, is an attorney. He spoke, but he never mentioned Karen Baer, and it says that on page 135 of the record. And then Michael Koplinka-Lair spoke the same day, and he also never mentioned Karen Baer. Now there is, in the lower court opinion, a reference to a case where he says that, the lower court judge, Reduce, says that if she had been denied the permission to speak on the basis of a personnel matter, which was not the case, then he finds, then it could be argued that the Karen Baer issue opened the door to that. But that's impossible for several reasons. Number one, it occurred later. It didn't occur before, so it couldn't have opened the door. Number two, and this is an important thing to understand. So this is a privilege of the floor on a legislature meeting. The Karen Baer issue is not privilege of the floor in a legislative meeting. It's a statutorily required meeting on a county budget, under which one could certainly argue that everybody has a right to talk on the county budget. It's statutorily required, it's not a privilege of the floor in which the legislature can say who can talk and what. People have a right to speak on the county budget at the mandatory annual budget hearing, which is required by New York State law to have. What had happened, and this is clear in the record too, is the day before, or the day of the meeting, there was an article in the paper which said that the county was going to use a personnel issue in order to defund the county human rights department. It was totally false, and there was a gathering of people who were there to talk about the budget implications of that. It begins, and it's in the record, with a statement from the budget chair saying that this personnel issue, which had been discussed in the paper, has no effect on the budget, that there's not going to be any change in the budget as a result of any personnel matters. And then a bunch of people who had gathered spoke about what they're talking, it's the budget hearing. They're talking about the issue of, and Karen Baer happens to be the personnel matter, a personnel matter not affecting the county budget. But it's a statutorily required annual budget hearing. It's not a privilege of the floor, and one could argue about what the standard is for that. But clearly people have a right to talk about the budget, whereas a privilege of the floor before a legislature meeting, they can set whatever things you can talk about. So it's a different situation to begin with. But the people cited by the appellants do not say what it says they said, and you can check the record for that. Thank you, that's all I have, Your Honor. It seems to me as though what counsel just described is a genuine issue of material fact that should have precluded the entry of summary judgments. My client has a totally different recollection of these events, and that's also in the record there. But there's one aspect about this that I think is a practical aspect. We're talking about the most sacred right that we have as Americans to address our government with grievances. Tompkins County has a three minute limitation, far less time than we have had before this honorable court this morning. When you weigh the equities of depriving someone of First Amendment constitutional right against a measly three minutes, this committee could have sit there and they could have doodled. The committee- There's a problem. So you're speaking to someone who was on a local community board in New York City. The problem is that your client is not the only person at these meetings. So you have three minutes, plus three minutes, plus three minutes. Everyone will have, every person who wants to speak about a topic that's outside of the authority of the legislature here, can drag on, if that's permitted, can drag on sessions for days. That is the problem. Why isn't this a reasonable rule? Well, in your honor's example that you gave there, you say that it was beyond the authority of the board that your honor was on. The important distinction here is that this was totally within the authority of this. And what I'm saying here is that on this night-  Pardon me, sir? The authority of the legislature personnel matter is money. It's the ultimate authority over everything. It's money. That's the emphasis you're relying on. Yes, it's money. It's money, that's where the power comes from. And my point is that when you're weighing these interests, and I understand what your honor is saying there, that's important, you can't have your time being wasted. But on this night, this night, she was the sole speaker there. We're talking about three minutes. Every night is a special night for someone. That's the other lesson there. Well, but your honor, doesn't that- I beg your pardon for interrupting you. I feel strongly about this. Doesn't that support my argument? This is important to her. Who are we to say, when we're working under the auspices of the First Amendment, who are we to judge beforehand what somebody can say for three minutes? Let them get up there. They can look at their phones. They can doodle. They can whisper to their partners. But what they did was adjourn the meeting. We're talking about the First Amendment here, right? There's an element of a practicality of balancing a governmental interest that your honor apparently has vast personal experience in. And we all- Well, I wouldn't say vast, but maybe too much. Okay, well, maybe too much. So how do we handle it? There are other fora here. There was another forum that was provided, as I understand it, on the record, that was provided by the legislature, and it said, go here, on the forum. How does that jive with the First Amendment that says, we can present our grievances to our government, right? We don't want to go and talk to a department head. We don't want to talk to a secretary. We want to talk to the Tompkins County legislature. You're suggesting that really it's irrelevant what the rules are. They could have, that she would have a right to come into the legislature and make this presentation, whether they offered privilege of the floor or not. They're obliged to hear whatever anyone has to say about anything that goes on in the county, at least. I think, your honor, that when they set- That must be your argument. Yes, yeah, I think, but there's more to it than that. When they set a three minute limit, like your honor was describing, right? I think for a First Amendment right, they got to suffer through the three minutes. They got to suffer through the three minutes. Three minutes, they got to suffer through it. Yes, yeah. Thank you, and we'll take the matter under advisement. Thank you so much. Thank you both for your assistance to the court. That's the last case that will be argued today, so I will ask the courtroom deputy to adjourn the court. The court stands adjourned.